UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| _____ )<br>**NORMA EDITH TORRES QUIÑONEZ** )<br>**and MARTHA ICELA FLORES** )<br>**GAXIOLA, and others similarly situated,** )<br> )<br>**Plaintiffs,** )<br> )<br>**v.** )<br> )<br>**CRAWFISH PROCESSING, LLC and** )<br>**CHARLES BERNARD,** )<br> )<br>**Defendants.** )<br>_____ ) | CIVIL ACTION<br><br>No. 1:21-cv-01281 |

## COMPLAINT

## PRELIMINARY STATEMENT

1.     Plaintiffs are two migrant agricultural workers employed by Crawfish Processing, LLC and Charles Bernard (collectively "Defendants") of Marksville, Louisiana during the 2020 crawfish processing season, which extended from approximately March through June. Plaintiffs were employed for long hours, often starting their day before dawn and working upwards of 10 or 11 hours on many days. Plaintiffs and their co-workers were never paid overtime. Plaintiffs bring this action to secure and vindicate rights afforded them by the Fair Labor Standards Act, 29 U.S.C. §§201, *et seq*. ("FLSA"), the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§1801, *et seq*. ("AWPA"), the Louisiana Wage Payment Law, Louisiana Revised Statutes 23:631, *et seq.*, and the law of contracts, La. Civ. Code art. 1906, *et seq*. Plaintiffs file

this action on behalf of other similarly-situated workers to secure minimum wage and overtime wages due them under the FLSA.

2.      Defendants willfully engaged in a scheme or policy of failing to pay their employees, including Plaintiffs, their minimum and overtime wages as required by the FLSA. In addition, Crawfish Processing, LLC and Charles Bernard violated the recordkeeping, wage statement, wage payment, working arrangement and housing provisions of the AWPA and failed to pay wages and provide other benefits as required by federal regulations applicable to Plaintiffs' employment as temporary foreign H-2B workers and incorporated in Plaintiffs' employment contracts.

3.      Plaintiffs seek an award of money damages, declaratory and injunctive relief, consequential, and compensatory damages and pre- and post-judgment interest and attorney's fees to make them whole for damages each of them suffered due to Defendants' violations of the law. Plaintiffs seek declaratory and injunctive relief to ensure that they and other employees of Crawfish Processing, LLC and Charles Bernard are not subjected to similar practices in the future.

## JURISDICTION

4.      Jurisdiction is conferred upon this Court by 29 U.S.C. §216(b), this action arising under the FLSA; by 29 U.S.C. §1854(a), this action arising under the AWPA; by 28 U.S.C. §1331, this action arising under the laws of the United States; and 28 U.S.C. §1367, providing supplemental jurisdiction over Plaintiffs' state law claims, because these state claims are so closely related to the federal claims that they form part of the same case or controversy.

5.      Declaratory relief is authorized pursuant to 28 U.S.C. §§2201 and 2202.

**VENUE**

6.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(b) and (c). As set out herein, a substantial part of the events giving rise to Plaintiffs' claim occurred in this district. Defendants are residents of this district, with Crawfish Processing, LLC conducting its business operations in Avoyelles Parish, Louisiana.

**PARTIES**

7.      Plaintiffs are citizens of Mexico. At all times relevant to this action, Plaintiffs were admitted to the United States under the H-2B temporary foreign worker visa program, 8 U.S.C. §1101(a)(15)(H)(ii)(b), administered in part by the United States Department of Labor ("DOL"). Plaintiffs are monolingual speakers of Spanish.

8.      At all times relevant to this action, Plaintiffs were migrant agricultural workers within the meaning of the AWPA, 29 U.S.C. §1802 and 29 C.F.R. §500.20(p), in that they were employed in agricultural employment of a seasonal or temporary nature handling and processing crawfish, an agricultural commodity, in their unmanufactured state and were required to be absent overnight from their permanent homes.

9.      Defendant Crawfish Processing, LLC is a closely held Louisiana corporation that operates and maintains its principal address in Marksville, Avoyelles Parish, Louisiana. At all times relevant to this action, Defendant Crawfish Processing, LLC was engaged in commerce within the meaning of the FLSA, 29 U.S.C. §203(s)(1)(A), in that it operated a crawfish processing plant that sold its products to businesses in various states outside of Louisiana. Plaintiffs and the other employees of Crawfish Processing, LLC regularly and recurrently handled goods and materials that traveled through interstate commerce prior to their use by the employees, including individual protective equipment, containers and packaging materials.

- 3 -

10.     Defendant Charles Bernard is a natural person residing in Marksville, Louisiana. At all times relevant to this action, Defendant was engaged in commerce within the meaning of the FLSA, 29 U.S.C. §203(s)(1)(A), in that he owned or operated a crawfish processing plant that sold its products to businesses in various states outside of Louisiana. Charles Bernard employed persons who regularly and recurrently handled goods and materials that traveled through interstate commerce prior to their use by the employees, including individual protective equipment, containers and packing materials.

11.     At all times relevant to this action, Defendants Crawfish Processing, LLC and Charles Bernard employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(g).

12.     At all times relevant to this action Defendants Crawfish Processing, LLC and Charles Bernard were agricultural employers of Plaintiffs within the meaning of the AWPA, 29 U.S.C. § 1802(2), in that they operated a processing facility and employed Plaintiffs and other migrant agricultural workers.

## BACKGROUND

### (H-2B Visas and Recruitment of Workers)

13.     An employer in the United States may import foreign workers to perform unskilled labor of a temporary nature if the DOL certifies that: (1) there are insufficient available workers within the United States to perform the job, and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. 8 U.S.C. §1101(a)(15)(H)(ii)(b). Foreign workers admitted in this fashion are commonly referred to as "H-2B workers."

14.     The terms and conditions of employment of H-2B workers are tightly regulated to protect the wages and working conditions of similarly employed U.S. workers from being

adversely impacted by the importation of foreign workers.  H-2B workers are protected by generally applicable federal labor standards, such as the FLSA, in addition to protections specific to the H-2B program.

15.    An employer seeking the admission of H-2B workers must obtain a labor certification from the DOL. 8 C.F.R. §214.2(h)(6)(iii)(C). In order to obtain a labor certification, the employer files an application with DOL. 20 C.F.R. §655.15. This application must include an attestation from the employer that it will abide with applicable regulatory requirements, including:

a.    Payment to all workers of at least the applicable prevailing wage during the entire period of the H-2B employment certification. 20 C.F.R. §§655.10(a), 655.18(b)(5) and 655.20(a). The applicable prevailing wage for the Plaintiffs' employment during 2020 was $9.75 per hour, based on a wage survey provided by Defendants;

b.    Payment of overtime wages to all workers for any overtime hours. 20 C.F.R. §655.18(b)(6);

c.    Specification of all deductions expected to be made from the worker's paycheck which are not required by law. 20 C.F.R. §§655.18(b)(11) and 655.20(c);

d.    A limitation of deductions from wages to those that are "reasonable." 20 C.F.R. §§655.18(b)(11) and 655.20(c);

e.    Prohibition of deductions for which agents or employees of the employer derive any payment, profit or benefit, directly or indirectly. 20 C.F.R. §655.20(c);

f.    Provision to all workers without charge of all tools and equipment required to perform the duties assigned. 20 C.F.R. §§655.18(b)(16) and 655.20(k); and

g.   Compliance with all Federal, State and local employment-related laws and regulations, including health and safety laws. 20 C.F.R. §655.20(z).

16.    Because of an anticipated shortage of domestic workers to work in its business, Defendant Crawfish Processing, LLC applied for temporary employment certification to employ foreign workers in certain jobs during 2019, 2020, and 2021, including, among other things, handling, peeling, processing and packing crawfish. The temporary labor certification applications identified Defendant Crawfish Processing, LLC as a prospective employer of H-2B workers. One application sought certification for a period from January 1, 2019 through June 30, 2019. Exhibit 1 hereto. The second application sought certification for a period from January 1, 2020 to June 30, 2020. Exhibit 2 hereto. The third application sought certification for a period from December 1, 2020 to June 30, 2021. Exhibit 3 hereto. The 2019 and 2020 temporary labor certification applications requested permission to import 60 H-2B workers, the 2020–2021 application requested 75 workers, to perform various crawfish processing tasks, including peeling, packing and packaging crawfish in their unmanufactured state. Each of the temporary labor applications promised that workers would be paid the higher of their piece-rate earnings or the prevailing wage, and that overtime wages would be paid at one and one-half times the prevailing wage. For the work to be performed in 2019, Defendant's temporary employment application promised a prevailing wage of $8.33 per hour and an overtime rate of $12.50 per hour. For the work to be performed in 2020 and 2021, Defendant's temporary labor certification applications promised a prevailing wage of $9.75 per hour and an overtime rate of $14.63 per hour. All of the temporary labor certification applications promised that Crawfish Processing, LLC would provide to workers without charge all tools, supplies and equipment required to perform the job duties assigned.

- 6 -

17.     The DOL reviewed Defendant's temporary labor certification applications, each of which incorporated the terms described in Paragraph 15. In accordance with 20 C.F.R. §655.50(b), the DOL ultimately approved Defendant's temporary labor certification applications, allowing Defendants to import H-2B workers to fill the manpower needs set out in its temporary labor certification applications.

## FACTS

18.     Pursuant to their temporary labor certification application seeking workers for employment in 2020, Defendants recruited Plaintiffs from their respective permanent residences in the Mexican state of Sinaloa. In February, 2020, Plaintiffs traveled at their own expense from their homes in Sinaloa to Monterrey, Nuevo Leon, Mexico, for their visa interviews. Following processing at the United States Consulate in Monterrey, Plaintiffs were issued H-2B visas for employment with Crawfish Processing, LLC for a period from February 26, 2020 through June 30, 2020.

19.     Crawfish Processing, LLC failed to provide the Plaintiffs at the time of their recruitment with a written statement in a language in which they were fluent of the terms and conditions of employment. At the Consulate, some workers, not Plaintiffs, were shown a small sheet of paper with some of the terms contained in Defendant's temporary employment certification application. Otherwise, the paperwork provided to Plaintiffs after arrival, if it included a copy of the contract, was in English only and promised a wage of $9.75 per hour and $14.63 per hour for overtime hours.

20.     After being issued their H-2B visas in or about February, 2020, as described in Paragraph 18, Plaintiffs traveled from Monterrey to Defendants' jobsite in Marksville, Louisiana.

21.     Upon their arrival in Louisiana in or about late February, 2020, Plaintiffs were assigned accommodations in trailers located adjacent to Defendants' processing plant. The trailers were controlled and provided by Defendants.  Among other things, Defendants were responsible for maintaining the plumbing, electricity, sanitation, and cleanliness of the trailers. Defendants also imposed and enforced rules on Plaintiffs and other workers regarding the housing, such as controlling when and whether they could have visitors, when workers could leave the housing site, and monitoring noise levels and social gatherings generally.

22.     Defendants permitted Plaintiffs to occupy the housing described in Paragraph 21 without these facilities having first been certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards relating to migrant labor housing.

23.     Defendants permitted the housing facilities described in Paragraph 21 to be occupied by the Plaintiffs without posting at the housing site a copy of a certificate of occupancy from a state, local or federal agency which had conducted a housing safety and health inspection of the facilities.

24.     Defendants failed to post in a conspicuous place or to present to the Plaintiffs a written statement of the terms and conditions of occupancy at the facilities described in Paragraph 21.

25.     Defendants failed to ensure that the accommodations provided to the Plaintiffs in the facilities described in Paragraph 21 complied with substantive Federal and State safety and health standards applicable to the housing. Among other things, the trailers were structurally unsound, lacked consistent and regular electrical service and were infested with rats and other

vermin. The grounds and open areas surrounding the trailers were cluttered with crawfish heads and other debris.

26.     Defendants' Marksville plant receives crawfish produced on area farms and peels, packs and packages them for sale in interstate commerce. Beginning on about February 28, 2020, Plaintiffs were employed at Defendants' processing plant handling, peeling, processing and packing crawfish in their unmanufactured state prior to delivery for storage.

27.     Plaintiffs' assigned job duties required them to each wear a hairnet, an apron and gloves for handling the crawfish. When they commenced employment with Crawfish Processing, LLC, Plaintiffs were each issued without charge a hairnet, apron and two pairs of gloves. Because of the nature of their job duties, Plaintiffs frequently tore their gloves. Once the two pairs of gloves provided by Defendants were no longer usable, Plaintiffs were required to purchase replacement gloves from their supervisor at Crawfish Processing, LLC.

28.     While Crawfish Processing, LLC's temporary labor certification application stated that workers would be employed 40 hours per week, Plaintiffs and their co-workers were routinely employed more than 40 hours in a workweek.

29.     Plaintiffs often started their day before dawn and worked upwards of 10 or more hours on many days, six days a week. Plaintiffs' co-workers worked a similar schedule and hours.

30.     For their work for Defendants, Plaintiffs were compensated in several different fashions. On some occasions, Plaintiffs were paid $9.75 per hour reported. Other times, Plaintiffs were paid on a piece-rate basis at a rate of $2.25 per pound of crawfish.

31.     Defendants utilized a similar compensation system for the workers employed on their operations during 2019 and 2021. The workers employed in 2019 were also occasionally

paid by the hour, although at a rate of $8.83 per hour. More frequently, the 2019 and 2021 workers were paid a piece-rate wage based on the number of pounds of crawfish meat peeled and extracted.

32.     In 2019, 2020, and 2021, Plaintiffs and similarly situated workers were never compensated at one and one-half the workers' regular rate or any other premium rate for time each of them was employed in excess of 40 hours.

33.     Defendants failed to accurately record the number of compensable hours worked by Plaintiffs. Among other things, Plaintiffs were not compensated for brief meal breaks of less than 30 minutes in duration. As a result, Defendants based the workweek wages for Plaintiffs on data that underreported the actual number of compensable hours worked.

34.     Because Defendants underreported the number of compensable hours worked as described in Paragraph 33, Plaintiffs in one or more workweeks were paid less than the $7.25 per hour minimum wage required by the FLSA, 29 U.S.C. §206(a).

35.     Because Defendants underreported the number of compensable hours worked as described in Paragraph 33, Plaintiffs in one or more workweeks were paid less than the $9.75 per hour rate prevailing wage required by the H-2B regulations, 20 C.F.R. §655.20(a), and Plaintiffs' employment contracts.

36.     Defendants paid Plaintiffs weekly for their labor.

37.     For those workweeks during which they were employed on a piece-rate basis, even when those earnings were less than the FLSA minimum wage or the $9.75 prevailing wage, Defendants failed to supplement Plaintiffs' piece-rate earnings so as to ensure that their respective weekly earnings equaled or exceeded the FLSA minimum wage of $7.25 per hour, as required by 29 U.S.C. §206(a) and 29 C.F.R. §776.5. Similarly, when Plaintiffs' earnings were

paid through a combination of hourly and piece rate earnings, Defendants failed to supplement Plaintiffs' earnings to ensure that the weekly earnings equaled or exceeded the FLSA minimum wage of $7.25 per hour. Defendants also failed to supplement Plaintiffs' piece-rate earnings so as to ensure that their respective weekly earnings equaled or exceeded the $9.75 prevailing wage rate.

38.     In order to collect rental charges for worker housing and recoup employee loans, Defendants required Plaintiffs to cash their weekly paychecks at Shirley's Crawfish Pad, a retail market operated by the owners of Crawfish Processing, LLC and located adjacent to the processing plant. During most workweeks, Defendants withheld $3 from each Plaintiff's weekly wages as a charge for cashing their paychecks. The $3 charge exceeded the actual cost of cashing these checks and included a profit for Defendants or a person affiliated with it. In violation of 20 C.F.R. §655.20(c), Defendant Crawfish Processing, LLC's job order included as part of its temporary labor certification application described in Paragraph 16 did not disclose the $3 deduction for check cashing.

39.     In addition to the check cashing charges described in Paragraph 38, Defendants withheld $60 from each Plaintiff's weekly wages as a rental charge for her accommodations in the trailers described in Paragraph 21, even though eight or nine workers lived in each trailer. This charge exceeded the actual cost of furnishing these facilities and the typical rent for similar housing in the area and included a profit for Defendants or a person affiliated with them.

40.     In addition to the check cashing charges described in Paragraph 38, Defendants charged Plaintiffs for replacement gloves required to perform the job duties to which they were assigned, as described on Paragraph 27. These gloves were primarily for the benefit of Defendants, within the meaning of the FLSA and its implementing regulation, 29 C.F.R.

§531.3(d). These charges exceeded the actual cost of furnishing the gloves and included a profit for Defendants or a person affiliated with them.

41.     As a result of the charges withheld from their wages and practices as described in Paragraphs 33, 38, 39, and 40, the individual earnings of Plaintiffs in one or more workweeks were less than the $7.25 per hour minimum wage required by the FLSA, 29 U.S.C. §206(a).

42.     As a result of the charges withheld from their wages and practices as described in Paragraphs 33, 38, 39, and 40, Plaintiffs' earnings in one or more workweeks were less than the $9.75 per hour rate required by the Wage Certification from the DOL, issued pursuant to the H-2B regulations, 20 C.F.R. §655.20(a), and Plaintiffs' employment contracts.

43.     Defendants failed to make, keep, and preserve payroll records with respect to Plaintiffs' labor that accurately reflect the compensable hours worked by Plaintiffs and showing all deductions from wages, including those described in Paragraphs 38 through 40.

44.     Defendants failed to provide each Plaintiff on every pay day with an itemized pay statement showing the employer's Internal Revenue Service identification number, an accurate accounting of the number of compensable hours worked and all withholdings from wages, including those described in Paragraphs 38 through 40.

## Collective Action Allegations

45.     All claims set forth in Counts I and II are brought by Plaintiffs on behalf of themselves and all other similarly situated persons pursuant to 29  U.S.C.  § 216(b). These similarly-situated individuals consist of all workers employed by Defendants Crawfish Processing, LLC and Charles Bernard during 2019, 2020, or 2021 to peel or pack crawfish, including all workers with the job title of "Crawfish Peeler" or who performed the job duties as

described in Defendants' Section or Addendum F to their temporary labor certification applications and accompanying job orders. *See* Ex. 1–3.

46.     Pursuant to their temporary labor certification applications as described in Paragraph 16, Defendants employed approximately 60 H-2B workers in 2019 and 2020 and 75 H-2B workers in 2021, including Plaintiffs, as well as an unknown number of local workers.

47.     Defendants failed to pay the similarly situated workers described in Paragraphs 45 and 46 their minimum wages as required by the FLSA for those workweeks in which they were paid for fewer hours than actually worked and compensable, including when their piece rate earnings did not reach the FLSA minimum wage, and due to unlawful charges withheld from their wages.

48.     Defendants failed to pay the similarly situated workers described in Paragraphs 45 and 46 overtime wages as required by the FLSA for those workweeks they were employed in excess of 40 hours.

49.     Pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), Plaintiffs seek to prosecute their FLSA claims as a collective action on behalf of all similarly situated workers employed by Defendants during 2019, 2020, or 2021.

## COUNT I

### FLSA OVERTIME WAGES
### (Collective Action)

50.     This count sets forth a claim for damages by Plaintiffs and similarly situated workers for Defendants' failure to pay overtime wages as required by the FLSA, 29 U.S.C. §207(a).

51.     Plaintiffs file this count on behalf of themselves and others similarly situated pursuant to 29 U.S.C. §216(b).

52.     As set out in Paragraphs 29 and 32, Defendants violated the overtime wage provisions of the FLSA, 29 U.S.C. §207(a), by failing to pay Plaintiffs and similarly-situated workers at a rate not less than one and one-half times their regular rate for those workweeks during 2019, 2020, or 2021 in which these individuals worked in excess of 40 hours.

53.     Defendants' violations of the FLSA's overtime provisions as set out in this count were willful within the meaning of the Portal-to-Portal Act, 29 U.S.C. §255(a). Defendants showed reckless disregard as to whether their failure to pay overtime wages was prohibited by the FLSA. Although they were aware that they were subject to the overtime provisions of the FLSA, as demonstrated by their job orders and temporary labor certification applications that disclosed overtime rates to both prospective workers and the DOL, Defendants failed to adequately inquire or ascertain as to whether they were obligated to pay Plaintiffs and similarly-situated workers at one and one-half their regular rate for work in excess of 40 hours in a workweek.

54.     As a consequence of Defendants' violations of the FLSA's overtime provisions as set out in Paragraph 32,  Plaintiffs and others similarly situated are each entitled to recover the amount of overtime wages due to them, plus an additional equal amount in liquidated damages, in accordance with Section 16(b) of the Act, 29 U.S.C. §216(b).

## COUNT II

### FLSA MINIMUM WAGES
### (Collective Action)

55.     This count sets forth a claim for damages by Plaintiffs and similarly situated workers for Defendants'  failure to pay minimum wages as required by the FLSA, 29 U.S.C. §206(a).

56.     Plaintiffs file this count on behalf of themselves and others similarly situated pursuant to 29 U.S.C. §216(b).

57.     Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs and similarly situated workers at least $7.25 for every compensable hour of labor performed in each workweek during which they were employed.

58.     The violations of the minimum wage provisions of the FLSA as set out in this count resulted in part from the failure of Defendants to credit and pay Plaintiffs and others similarly situated for all compensable hours worked, as described in Paragraphs 33, 34, and 37.

59.     The violations of the minimum wage provisions of the FLSA as set out in this count resulted in part from the withholdings Defendants made from Plaintiffs' and similarly situated workers' wages for check cashing services, rental payments and work gloves, as described in Paragraphs 38 through 41.

60.     Defendants' violations of the FLSA's minimum wage provisions as set out in this count were willful within the meaning of the Portal-to-Portal Act, 29 U.S.C. §255(a). Defendants showed reckless disregard as to whether their failure to pay minimum wages was prohibited by the FLSA. Although they were aware that they were subject to the minimum wage provisions of the FLSA, Defendants failed to adequately inquire or ascertain as to whether they were obligated to pay Plaintiffs and similarly-situated workers at least $7.25 for every compensable hour of labor performed in each workweek.

61.     As a consequence of Defendants' violations of the FLSA's minimum wage provisions as set out in Paragraphs 29 through 41,  Plaintiffs and similarly situated workers are each entitled to recover the amount of minimum wages due to them, plus an additional equal amount in liquidated damages, in accordance with Section 16(b) of the Act, 29 U.S.C. §216(b).

## COUNT III

**MIGRANT AND SEASONAL AGRICULTURAL WORKER PROTECTION ACT**

62.     This count sets forth a claim by Plaintiffs for Defendants' violations of the AWPA and its attendant regulations.

63.     As set out in Paragraph 19, Defendants failed to provide the Plaintiffs at the time of their recruitment with a written statement in a language in which they were fluent of the terms and conditions of employment, in violation of the AWPA, 29 U.S.C. §§1821(a) and (g), and its attendant regulations, 29 C.F.R. §§500.75(b) and 500.78.

64.     As set out in Paragraph 22, Defendants permitted Plaintiffs to occupy the housing described in Paragraph 21 without these facilities having first been certified by a State or local health authority or other appropriate agency as meeting applicable safety and health standards relating to migrant labor housing, in violation of the AWPA, 29 U.S.C. §1823(b)(1), and its attendant regulations, 29 C.F.R. §500.135(a).

65.     As set out in Paragraph 23, Defendants permitted the housing facilities described in Paragraph 21 to be occupied by the Plaintiffs without posting at the housing site a copy of a certificate of occupancy from a state, local or federal agency which had conducted a housing safety and health inspection of the facilities, in violation of the AWPA, 29 U.S.C. §1823(b)(1), and its attendant regulations, 29 C.F.R. §500.135(b).

66.     As set out in Paragraph 24, Defendants failed to post in a conspicuous place or to present to the Plaintiffs a written statement of the terms and conditions of occupancy at the facilities described in Paragraph 21, in violation of the AWPA, 29 U.S.C. §§1821(c) and (g), and its attendant regulations, 29 C.F.R. §§500.75(f) and 500.78.

67.     As set out in Paragraph 25, Defendants failed to ensure that the accommodations provided to the Plaintiffs in the facilities described in Paragraph 21 complied with substantive Federal and State safety and health standards applicable to the housing, in violation of the AWPA, 29 U.S.C. §1823(a), and its attendant regulations, 29 C.F.R. §500.130.

68.     As set out in Paragraph 43, Crawfish Processing, LLC failed to make, keep, and preserve payroll records with respect to Plaintiffs' labor as required by the AWPA, 29 U.S.C. §1821(d)(1), and its attendant regulations, 29 C.F.R. §500.80(a).

69.     As set out in Paragraph 44, Defendants failed to provide each Plaintiff on every pay day with an itemized pay statement as required by the AWPA, 29 U.S.C. §1821(d)(2), and its implementing regulations, 29 C.F.R. §500.80(d).

70.     As set out in Paragraphs 32, 34, 35, 41, and 42, Defendants violated without justification its working arrangement with Plaintiffs regarding the payment of promised prevailing and overtime wages, in violation of the AWPA, 29 U.S.C. §1822(c), and its attendant regulations, 29 C.F.R. §500.72.

71.     As set out in Paragraphs 32 through 42, Defendants failed to pay Plaintiffs their wages when due for work performed, in violation of the AWPA, 29 U.S.C. §1822(a), and its attendant regulations, 29 C.F.R. §500.81.

72.     As set out in Paragraph 38, Defendants required Plaintiffs to purchase check cashing services from Defendants or their agent, in violation of the AWPA, 29 U.S.C. §1822(b), and its attendant regulations, 29 C.F.R. §500.73.

73.     The violations of the AWPA and its attendant regulations set out in this count were the natural consequences of the conscious and deliberate actions of Defendants. These violations occurred as a result of Defendants' regular business practices. As a result, these

violations of the AWPA and its attendant regulations were intentional within the meaning of the AWPA, 29 U.S.C. §1854(c)(1).

74.     As a result of Defendants' violations of the AWPA as set out in this count, Plaintiffs have suffered damages.

**COUNT IV**

**BREACH OF EMPLOYMENT CONTRACT**

75.     This count sets forth a claim for damages resulting from Crawfish Processing, LLC's breach of the regulations governing the H-2B program and the workers' employment contracts, as embodied in Defendant's temporary labor certification application seeking workers for 2020.

76.     As set out in Paragraphs 15 through 17, Crawfish Processing, LLC's temporary labor certification application seeking workers for 2020 promised workers that they would be paid a prevailing wage of $9.75 per hour for their labor, with a wage of $14.63 to be paid for overtime hours. This temporary labor certification also promised that Crawfish Processing, LLC would provide to workers without charge all tools, supplies and equipment required to perform the job duties assigned. When approved by the DOL, this offer became the terms applicable to the contractual employment relationship between Plaintiffs and Crawfish Processing, LLC.

77.     Plaintiffs accepted the terms as described in Paragraphs 15 and 16 by traveling to the United States and working for Crawfish Processing, LLC in the jobs authorized by their H-2B visas.

78.     Because the promises set out in Paragraphs 15 and 16 were a legal condition of Crawfish Processing, LLC obtaining H-2B visas, those promises are incorporated as a matter of law into the contractual relationship between Crawfish Processing, LLC and Plaintiffs.

79.     Crawfish Processing, LLC violated its contractual relationship with Plaintiffs by failing to pay them wages equaling or exceeding the prevailing wage, by failing to pay minimum and overtime wages as required by the FLSA, by failing to comply with the AWPA as described in Count III, and by failing to provide gloves without charge.

80.     As a result of Crawfish Processing, LLC's actions as described in this count, Plaintiffs have been denied wages and benefits due them under their employment contracts for which they are entitled to relief.

**COUNT V**

**(LOUISIANA WAGE PAYMENT ACT)**

81.     This count sets forth a claim for damages resulting from Crawfish Processing, LLC's violation of the Louisiana Wage Payment Act, Louisiana Revised Statutes 23:631 and 23:632 ("LWPA").

82.     As a result of its actions set out in Paragraphs 30 through 42, Crawfish Processing, LLC failed to pay Plaintiffs within 15 days of their resignation from employment the amounts due each of them under the terms of their employment, in violation of the Louisiana Wage Payment Act, La. Rev. Stat. 23:631(A)(1)(b).

83.     Plaintiffs notified Defendants in writing of the amounts of unpaid wages they are owed under the LWPA and demanded payment via a letter dated April 13, 2021 that was delivered to Defendants on April 16, 2021. Defendants have not made any payments to Plaintiffs for the amounts of unpaid wages they are owed under the LWPA, nor have they contacted Plaintiffs in an attempt to resolve those claims.

84.     As a consequence of Crawfish Processing, LLC's violations of the LWPA, Plaintiffs are each entitled to recover their unpaid wages along with penalty wages as prescribed by La.  Rev. Stat. 23:632(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court enter an order:

a.      Granting judgment in favor of Plaintiffs on their Count I claims under the overtime provisions of the FLSA in the amount of the unpaid overtime due each of them, as well as an equal amount as liquidated damages;

b.      Granting judgment in favor of those similarly-situated employees described in Count I who timely opt-in and awarding each of them the amount of FLSA unpaid overtime wages due to him or her, as well as an equal  amount as liquidated damages;

c.      Granting judgment in favor of Plaintiffs on their Count II claims under the minimum wage provisions of the FLSA in the amount of the unpaid minimum wages due each of them, as well as an equal  amount as liquidated damages;

d.      Granting judgment in favor of those similarly-situated employees described in Count II who timely opt in and awarding each of them the amount of FLSA unpaid minimum wages due to him or her, as well as an equal amount as liquidated damages;

e.      Declaring that Defendants are subject to requirements of the Migrant and Seasonal Agricultural Worker Protection Act, and have violated the Act's provisions as set out in Count III;

f.      Granting judgment in favor of Plaintiffs on their claims under the AWPA set forth in Count III, and awarding each of them her actual damages or statutory damages of $500, whichever is greater, for every violation of the AWPA and its attendant regulations set forth in that count;

g.      Granting judgment in favor of Plaintiffs on their breach of contract claims as set forth in Count IV and awarding each of them her actual and consequential damages;

h.      Granting judgment in favor of Plaintiffs on their claims under the Louisiana Wage Payment Act set forth in Count V and awarding each of them the unpaid wages due them for their employment and penalty wages as provided in La. Rev. Stat. 23:632(A);

i.      Permanently enjoining Defendants from further violations of the AWPA;

j.      Awarding Plaintiffs a reasonable attorney's fee pursuant to 29 U.S.C. §216 and La. Rev. Stat. 23:632(A);

k.      Awarding Plaintiffs the costs of this action; and

l.      Granting such further relief as this Court deems just and appropriate.

Respectfully submitted,

*/s/ Caitlin Berberich*
Caitlin Berberich, TN Bar No. 025780
*Trial Attorney
Pro Hac Vice Motion Forthcoming*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
cberberich@trla.org

*/s/ David Huang*
David Huang, TN Bar No. 038350
*Pro Hac Vice Motion Forthcoming*
SOUTHERN MIGRANT LEGAL SERVICES
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd., Ste. 135
Nashville, TN 37217
Telephone: (615) 538-0725
Facsimile: (615) 366-3349
dhuang@trla.org


*/s/ Mary Yanik*
Mary Yanik, LA No. 36973
*Admitted to Practice in W.D. La.*
Tulane Immigrant Rights Clinic
6329 Freret St., Suite 130
New Orleans, LA 70118
Telephone: (504) 865-5153
Facsimile: (504) 862-8753
myanik@tulane.edu

ATTORNEYS FOR PLAINTIFFS