## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| NORMA EDITH TORRES QUINONEZ, MARTHA ICELA FLORES GAXIOLA, and others similarly situated, | CIVIL ACTION NO. 21-CV-1281 |
| Plaintiffs, | JUDGE DAVID JOSEPH |
| vs. | MAGISTRATE JUDGE JOSEPH PEREZ-MONTES |
| CRAWFISH PROCESSING, LLC and CHARLES BERNARD, | |
| Defendants. | |

## RULE 26(f) REPORT

Trial Date:  TBD, scheduling conference set for August 17, 2021.

Pretrial Conference Date: TBD, scheduling conference set for August 17, 2021.

Type of Trial:  ☐  JURY       ☒  BENCH

Estimated length of trial is 4-5 court days.

1. **Participants:**

   **Counsel for Plaintiffs:**

   Caitlin Berberich, TA

   David Huang

   **Counsel for Defendants:**

   Cliff A. LaCour, TA

2. **Affirmation Regarding Initial Disclosures:**

   The parties affirm that they will exchange their disclosures under Rule 26(a)(1) ("initial disclosures") by August 10, 2021.

3.  **Jurisdictional Basis:**

Jurisdiction is conferred by 29 U.S.C. §216(b), this action arising under the Fair Labor Standards Act ("FLSA"); by 29 U.S.C. §1854(a), this action arising under the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"); by 28 U.S.C. §1331, this action arising under the laws of the United States; and 28 U.S.C. §1367, providing supplemental jurisdiction over Plaintiffs' state law claims.

4.  **Brief Description of Claims:**

**Count I (FLSA Overtime Wages)**

Plaintiffs allege that Defendants failed to pay Plaintiffs the federally mandated overtime pay of time and a half of the regular rate for hours worked in excess of 40 hours a workweek under 29 U.S.C. §207(a). Plaintiffs seek compensatory damages for their unpaid overtime wages and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b), as well as attorney's fees. Plaintiffs bring their FLSA overtime claims on behalf of themselves and other similarly situated workers employed by Defendants in 2019, 2020, and 2021. Because it was the policy of Defendants not to pay overtime and because Defendants calculated pay and compensated workers using a uniform system, all workers employed between 2019 and 2021 were similarly situated.

Plaintiffs were employed by Defendants in crawfish processing under temporary H-2B visas starting in March of 2020. Plaintiffs and other similarly situated workers regularly worked upwards of 10 or 11 hours daily, often starting their workday before dawn, and working over 60 hours most weeks. Defendants paid their employees through a combination of hourly and piece rate work, per pound of crawfish peeled or packed. Plaintiffs' H-2B employment

contracts guaranteed them $9.75 per hour or $2.25 per pound of crawfish, whichever was higher.

Defendants provided their employees with several pay-related documents, including a "Wages Report" and "Job Punchcard Reports" with different work codes. The "Wages Report," which was the pay statement provided to workers, does not accurately document the total hours worked each week. In some weeks, due to a malfunction of the computer where workers entered their employee identification numbers to clock in and out or for other reasons, the punchcard reports and wages reports undercounted hours worked. Defendants also undercounted compensable hours because they did not pay workers for short breaks (see minimum wage section below). The time that workers clocked out and then back in for these short breaks is documented on Defendants' punchcard reports. During weeks in which workers were paid through a combination of hourly and piece rate work, Defendants obscured overtime violations by only reporting hours from work coded under one category (such as "peeling") and separately reported and paid other work, for example coded as "processing," at a piece rate of $2.25 per pound of crawfish. Although the Wages Reports do not disclose the total weekly hours worked, there were many weeks in which Defendants provided workers with two separate punchcard reports for all the work separately coded as peeling and processing, and the total hours from Defendants' own records confirm that workers' hours regularly totaled between 60 and 75 hours, and yet they were never paid overtime. Thus, the facts supporting this claim include Defendants' own records of hours worked (punchcard and wages reports) showing that workers regularly were employed in excess of 40 hours weekly and yet were not paid overtime, as well as the testimony of Plaintiffs and other similarly situated workers regarding their hours worked.

**Count II (FLSA Minimum Wages)**

Plaintiffs allege that Defendants failed to pay Plaintiffs the federally mandated hourly minimum wage of $7.25 for every hour worked under 29 U.S.C. §206(a) in some workweeks. Plaintiffs seek compensatory damages for their unpaid minimum wages and an equal amount in liquidated damages pursuant to 29 U.S.C. § 216(b), as well as attorney's fees. Plaintiffs bring their FLSA minimum wage claims on behalf of themselves and other similarly situated workers employed by Defendants in 2019, 2020, and 2021. Because it was the policy of Defendants to charge all workers $60 for rent and a $3 check-cashing fee, all workers employed between 2019 and 2021 were similarly situated.

See facts described above under Count I. Plaintiffs' minimum wage claims resulted from a variety of unlawful practices by Defendants, including: underreporting hours worked in some weeks; failing to compensate workers for short breaks that did not qualify as bona fide meal periods, *see* 29 C.F.R. §§ 785.18 and 785.19; unlawful charges for work tools (gloves), check cashing fees, and rent for housing, *see* 29 U.S.C. § 203(m) and 29 C.F.R. Part 531. Defendants' punchcard reports and other time records document when workers clocked out and clocked back in for short breaks during the workday, which time was not compensated. When Defendants provided workers with their pay checks, Plaintiffs and other workers were required to cash their checks at Shirley's Crawfish Pad, a business located at the same address as Defendants and owned and operated by the same family that operated Crawfish Processing, LLC. In the same transaction in which their checks were cashed, Plaintiffs and other similarly situated workers were provided with receipts by Shirley's Crawfish Pad, documenting the $60 weekly deductions for rent and $3 check cashing charge, as well as other deductions for items such as "loans."

Based on testimony of Plaintiffs and other workers, as well as other discovery, the housing provided by Defendants to Plaintiffs did not comply with temporary labor camp housing standards, 29 CFR § 1910.142. For example, the trailers were overcrowded, with up to nine workers per unit, in violation of 29 CFR §§ 1910.142(b)(2) and (b)(3). The trailers were also infested with vermin, in violation of 29 CFR § 1910.142(j). Furthermore, the $60 per week per worker charged exceeded the reasonable value of the housing provided. With 8-9 workers per trailer, Defendants collected around $1,920-$2,160 per month for each trailer, which is unreasonably high for Marksville, Louisiana and for the quality of the housing provided. For both of these reasons, the $60 rental charges to Plaintiffs and similarly situated workers were unlawful and contributed to the minimum wage violations. *See* 29 CFR § 531.31 ("Facilities furnished in violation of any Federal, State, or local law, ordinance or prohibition will not be considered facilities "customarily" furnished."); *Hernandez-Garcia v. Frog Island  Seafood, Inc.*, 644  F.Supp. 696, 705-06, 712 (E.D.N.C. 2009); 29 C.F.R. § 531.3 (reasonable cost cannot be more than the actual cost to the employer and cannot include a profit to the employer).

**Count III (AWPA)**

Plaintiffs allege that Defendants violated various working arrangement, disclosure, wages, and housing provisions of the AWPA under 29 U.S.C. §§ 1801 *et seq.* Plaintiffs seek statutory damages of up to $500 per violation and actual damages for Defendants' breaches of the working arrangement, pursuant to 29 U.S.C. § 1854.

Plaintiffs assert the following violations of the AWPA:

- 29 U.S.C. §1821(a) and 29 C.F.R. §500.75(b) (failure to provide a written disclosure) and 29 U.S.C. §1821(g) and 29 C.F.R. §500.78 (failure to provide written disclosure in the workers' native language);

- 29 U.S.C. §1821(f) (providing false and misleading information on wage statements);

- 29 U.S.C. §1823(b)(1) and 29 C.F.R. §500.135 (failure to have worker housing inspected and certified prior to occupancy);

- 29 U.S.C. §1821(d)(1) and 29 C.F.R. §500.80(a) (failure to maintain accurate records of the hours worked);

- 29 U.S.C. §1821(d)(2) and 29 C.F.R. §500.80(d) (failure to provide each worker with written pay statement with required employment data);

- 29 U.S.C. §1822(c) (failure to comply with working arrangements);

- 29 U.S.C. §§1822(a) and 1832(a) (failure to pay each worker the wages owed when due);

- 29 U.S.C. §§1821(d)(1)(E) and 1831(c)(1)(E), and 29 C.F.R. §500.80(a)(5) (failure to make and keep records of the specific sums withheld from wages and the purpose of each sum withheld); and

- 29 U.S.C. §§1822(b) and 1832(b), and 29 C.F.R. §500.73 (requiring workers to purchase any goods solely from employer).

The facts supporting these AWPA claims largely overlap with the FLSA minimum wage and overtime facts above, including the facts describing the inaccuracies and deficiencies in Defendants' pay statements and hours records, Defendants' failure to properly pay Plaintiffs owed wages, Defendants' improper deductions and documentation thereof, and the

substandard housing provided by Defendants to Plaintiffs. Defendants did not provide Plaintiffs with copies of their employment contracts in Spanish at the point of recruitment. Nor were the trailers where Plaintiffs resided inspected and certified as meeting temporary labor camp housing standards prior to occupancy by Plaintiffs.

Plaintiffs assert that crawfish processing falls within the AWPA's definition of agriculture because it relates to the handling of an agricultural commodity (crawfish) in its unmanufactured state. *See* 29 U.S.C. §1802(3); 29 C.F.R. §500.20(e); *Rodriguez v. Whiting Farms, Inc.*, 360 F.3d 1180, 1188 (10th Cir. 2004) (noting that chicken pelts remained in their unmanufactured state after they had been skinned, trimmed, and dyed). Plaintiffs' job duties consist of handling, peeling, processing, and packing crawfish in their unmanufactured state prior to delivery for storage.

**Count IV (Breach of Employment Contract)**

Plaintiffs allege that Defendants failed to pay their contractually guaranteed wages of $9.75 per hour for every hour worked or $2.25 per pound of crawfish, whichever is higher, and $14.63 per hour for hours worked in excess of 40 hours each week under the Louisiana law of contracts, La. Civ. Code art. 1906, *et seq*. Plaintiffs seek compensatory actual and consequential damages.

The facts supporting these wage claims largely overlap with the FLSA minimum wage and overtime facts above, but damages would be calculated at the minimum contractually guaranteed rate of $9.75 per hour rather than the FLSA minimum rate of $7.25. Because Plaintiffs were employed as temporary foreign workers pursuant to the federally administered H-2B program, their employment contracts containing the material terms of employment, including wages, are described in Defendants' Application for Temporary Employment

Certification and associated job orders, and incorporate the H-2B program regulations, 20 C.F.R. §§ 655.18 and 655.20 (describing the minimum terms and assurances that must be contained in all H-2B job orders).

**Count V (Louisiana Wage Payment Act)**

Plaintiffs allege that Defendants failed to pay their contractually guaranteed wages of $9.75 per hour for every hour worked or $2.25 per pound of crawfish, whichever is higher, and $14.63 per hour for hours worked in excess of 40 hours each week within 15 days of their resignation from employment under the Louisiana Wage Payment Act (LWPA), Louisiana Revised Statutes 23:631, *et seq.* Plaintiffs seek compensatory damages for their unpaid wages, penalty wages, and attorney's fees as provided for in La. Rev. Stat. 23:632(A).

The facts supporting these wage claims largely overlap with the facts above and, like the contract and AWPA breach of the working arrangement claims, damages would be calculated at the minimum contractually guaranteed rate of $9.75 per hour rather than the FLSA minimum rate of $7.25. Under the LWPA, Defendants must pay Plaintiffs the amounts of unpaid wages owed under the terms of their employment within 15 days of their resignation from employment. Plaintiffs' employment with Defendants ended in 2020 and they have not been paid for wages owed.

5. **Brief Statement of Responses:**

Plaintiffs are attempting to maintain a collective action for all persons allegedly employed by Crawfish in 2019, 2020, and 2021. However, Plaintiffs are not similarly situated to the workers for whom they seek to maintain a collective action. For example, both Plaintiffs were only employed by Crawfish in 2020. Indeed, one of the Plaintiffs, Martha Icela Flores

Gaxiola ("Gaxiola"), was only employed for a portion for 2020. Neither Plaintiff was employed at all by Crawfish Processing, LLC ("Crawfish") during 2019 or 2021.

Nonetheless, with respect to the claims of these individual Plaintiffs, they attempt to state five causes of action as outlined above. Each of the five alleged causes of action in Plaintiffs' Complaint stem from a common nucleus of alleged facts. Defendants generally deny all said facts as stated by Plaintiffs and deny any liability to Plaintiffs whatsoever. Specifically, Defendants note Charles Bernard is not an owner of Crawfish. Therefore, his inclusion is this suit is without merit.

Further, Defendants deny that any employee was required to live at any specific location. While arrangement for housing were made available, the housing available was not owned by or operated by Crawfish. Crawfish did not charge any Plaintiff or any other worker any amount for housing and did not agree to provide housing in any manner. Indeed, some workers chose to find their own housing.

Defendants further note that Plaintiffs take issue with the alleged actions of Shirley's Crawfish Pad because it is owned by the same "family" as Crawfish. However, Shirley's Crawfish Pad was not the employer of Plaintiffs and no cause of action is stated against Shirley's Crawfish Pad. Plaintiffs nor any other workers were ever required to utilize the services of Shirley's Crawfish Pad and were free to cash or deposit the checks issued by Crawfish, which did not contain any of the allegedly unlawful deductions complained of, at any place of their choosing. Because Crawfish did not provide the housing (and was not required to as these workers are not H1B workers), there is no cause of action related to same.

Finally, Defendants note crawfish peelers are specifically not covered by the AWPA because "[t]he process of boiling crawfish is the transition from an unmanufactured state to a manufactured state. Thus, any tasks involving the 'handling planting, drying packing, packaging, processing, freezing, grading, storing, or delivering to storage' of the crawfish following the boiling process could not fall within the definition of agricultural labor as per the Code of Federal Regulations." *In the Matter of: Grade A Crawfish*, BALCA Case No. 2016-TLC-00009. Further, even if the crawfish is "unmanufactured," similar to oysters shucking, crawfish peeling is aquaculture rather than agriculture and thus not covered by the AWPA. *Bojorquez-Moreno v. Shores & Ruark Seafood Co., Inc.*, 92 F.Supp.3d 459, 466 (E.D. Va.2015). In any event, Crawfish denies the factual allegations which would give rise to the alleged violations of AWPA even if it did apply.

6. **Anticipated Amendments to Pleadings and Motions:**

Plaintiffs anticipate filing an amended complaint to join additional Plaintiffs. If it becomes necessary, Plaintiffs also anticipate filing a motion for court-authorized notice to similarly situated workers under the Fair Labor Standards Act. Plaintiffs anticipate filing a motion for summary judgment after discovery.

Defendants anticipate filing dispositive motions on the AWPA claims as well as other potential claims.

7. **Anticipated Expert Witnesses:**

Plaintiffs and Defendants have not currently identified an anticipated expert witness but reserve the right to later retain and disclose experts pursuant to the Federal Rules of Civil Procedure and the scheduling order entered by this Court.

8. **Discovery Plan:**

The Parties do not believe that a full scheduling order is necessary at this time, because the Parties have made substantial steps towards resolution of this case. However, the Parties agree that a Rule 16 Conference may be helpful after subsequent discussions because the Court will likely need to play a role in approving and setting deadlines for court-authorized notice to similarly situated workers who may opt into the FLSA collective action. Nonetheless, the Parties propose the following deadlines if they are able to come to terms on resolution:

Deadline for Defendants to produce a list of names and contact information for similarly situated workers: **September 24, 2021**

Deadline for filing agreed court-authorized notice to similarly situated workers: **September 24, 2021**

Deadline for similarly situated workers to opt into this FLSA collective action by filing FLSA consent forms: **March 15, 2022**

9. **Stipulations:**

Defendants employed Plaintiffs within the meaning of the FLSA, 29 U.S.C. §203(g). Defendants were Plaintiffs' employer as defined by the FLSA. Plaintiffs were employees of Defendants as defined by the FLSA.

Defendants were engaged in commerce within the meaning of the FLSA, 29 U.S.C. §203(s)(1)(A), at all times relevant to this lawsuit.

Defendants are not exempt from 29 U.S.C. §207(a) and must pay their employees overtime of time and a half of the regular rate for hours worked in excess of 40 hours in a workweek.

Plaintiffs were employed pursuant to H-2B visas obtained by Defendant Crawfish Processing, LLC to peel, process, and pack crawfish.

When employed by Defendants in 2020, Plaintiffs peeled crawfish.

10. **Major Issues of Fact and Law in Dispute:**

Plaintiffs dispute that the hours recorded on Defendants' wages reports are an accurate reflection of all their hours worked each week.

Defendants dispute that they provided Plaintiffs with housing and that Plaintiffs' rent payments, check-cashing fees, or payments for gloves qualify as deductions from Plaintiffs' pay. Defendants dispute that they charged Plaintiffs any fees whatsoever. If any fee was charged by Defendants, which is not admitted but specifically denied, Defendants deny such charges were unreasonable or exceeded the actual cost.

Plaintiffs have asserted claims under the AWPA. 29 U.S.C. §§1801, *et seq*. Defendants dispute that they are covered by the AWPA. Thus, the Parties dispute that the crawfish processing performed by Plaintiffs falls within the AWPA's definition of agriculture and dispute that the crawfish was in an "unmanufactured" state.

Defendants dispute that workers in 2019 and 2021 are similarly situated to Plaintiffs.

Defendants dispute all liability to Plaintiffs.

11. **Related Case Information:**

None

12. **Alternative Dispute Resolution (ADR):**

The Parties have already engaged in substantive discussions and made progress regarding the possibility of resolving this case. Although unnecessary now, the Parties believe that settlement may be facilitated by mediation or a court-ordered settlement conference with

a U.S. Magistrate Judge, after: (1) the parties have made their Rule 26(a)(1)

initial disclosures; and (2) following the exchange of documents and disclosures, the parties

cannot reach agreement on their own after further discussions.

**13. <u>Rule 16 Conference</u>:**

Plaintiffs believe that a Rule 16 Conference will be beneficial.

**14. <u>Electronic Courtroom</u>:**

This case is document intensive because the claims rely heavily on payroll and time punchcard

reports among other documentary proof, so the parties will require the technologies of the

"Electronic Courtroom" to admit and present exhibits at trial.

**15. <u>Electronically Generated Exhibits or Aids</u>:**

None at this time.

**16. <u>Handicap Provisions</u>:**

None at this time.

Respectfully Submitted:

NEUNERPATE

By:     */s/ Cliff LaCour*
Cliff A. LaCour, T.A.      #30581
(clacour@neunerpate.com)
Benjamin L. Mayeaux     #19042
(bmayeaux@neunerpate.com)
B. Lance Person          #35280
(lperson@neunerpate.com)
One Petroleum Center
1001 W. Pinhook Rd., Suite 200
Lafayette, Louisiana 70503
Telephone:   (337) 237-7000
Fax:          (337) 233-9450

**Attorneys for Crawfish Processing, LLC
and Charles Bernard**

Page **13** of **14**

-and-

SOUTHERN MIGRANT LEGAL SERVICES, A
PROJECT OF TEXAS RIOGRANDE LEGAL AID,
INC.


By:     */s/ Caitlin Berberich*_____
        Caitlin Berberich, T.A.
        (cberberich@trla.org)
        *Tennessee Bar* #025780
        David Huang
        (dhuang@trla.org)
        *Tennessee Bar* #038350
        311 Plus Park Blvd., Suite 135
        Nashville, TN 37217
        Telephone:   (615) 538-0725
        Fax:             (615) 366-3349


             -and-

        */s/ Mary Yanik*_____
        Mary Yanik                    #36973
        (myanik@tulane.edu)
        TULANE IMMIGRATION RIGHTS CLINIC
        6329 Freret Street, Suite 130
        New Orleans, Louisiana 70118
        Telephone:   (504) 865-5153
        Fax:             (504) 865-8753

**Attorneys for Plaintiffs**